**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**REAL PROPERTY LOCATED AT 20832 BIG ROCK DRIVE, MALIBU, CA 90265, Defendant.**

**Hour Holdings, Ltd., Claimant–Appellant.**

No. 93–55281.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1994.

Decided April 7, 1995.

---

21. This may be a moot point, since the joint venture labs are already out of business.

**1404**

Victor Sherman, Sherman & Sherman, Santa Monica, CA, for claimant-appellant Hour Holdings.

Lee S. Arian (argued), Kevin L. James (on the brief), Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee U.S.

Before: FEINBERG *, SCHROEDER and Alex KOZINSKI, Circuit Judges.

* The Honorable Wilfred Feinberg, Senior United States Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

KOZINSKI, Circuit Judge.

Hour Holdings is a limited partnership formed exclusively for the purpose of owning a house on Big Rock Drive in Malibu, California. The partnership ostensibly has several partners, but all the money for the purchase of the house was funneled through one couple, Greg Allen and Lisa Santulli. Allen located the house and arranged to buy it from its previous owner, a known drug-dealer and business associate of Allen's named Charles Goldman. Apparently, Allen was himself a bit of a drug dealer, though none of the partners in Hour Holdings (except perhaps Santulli) seems to have been involved.

Drug dealers who buy houses from drug dealers often use drug money to make the purchase. In this case the circumstances of the sale were particularly suspicious: Each of the limited partners in Hour Holdings was a family member or friend of Allen's and Santulli's; each invested a large sum of money in the property practically sight-unseen; each paid with an untraceable cashier's check or cash. The DEA thus had cause to believe Hour Holdings was a sham, that Allen had received the house as part of a drug deal with Goldman, and that the partners in Hour Holdings either knew this when they invested in the property, or never invested in the property at all, but acted merely as conduits for Allen to launder money.

On November 9, 1990, the Government filed a civil forfeiture complaint against the house on Big Rock Drive under 21 U.S.C. § 881(a)(6), alleging that the entire house was traceable to a narcotics transaction. The DEA then obtained authorization to seize the house in much the same way it might obtain a warrant to arrest a person: It approached a magistrate, established probable cause that the house had been purchased with drug proceeds, and asked for (and received) a writ of entry and a warrant to arrest the house *in rem*. As was then standard procedure, the owners of the house were not notified in advance of the impending seizure, nor were they given an opportunity to contest the Government's showing of probable cause before the magistrate.

On November 20, 1990, armed with the writ of entry and arrest warrant, DEA agents seized the house. Inside, they found $99,830.00 in musty, brittle U.S. currency lying on a bedroom floor beside a humidifier. Most of the money was in $20 bills. They also discovered a secret compartment in one of the closets, which Goldman later admitted building as a safe storage place for large amounts of cash. Based on this evidence, the Government amended its forfeiture complaint to include a claim that the house had been used to facilitate the commission of drug law violations. *See* 21 U.S.C. § 881(a)(7).

Hour Holdings filed a claim in the forfeiture action and demanded a jury trial to contest the Government's right to forfeit the house. Before trial, Hour Holdings moved to dismiss the complaint on the ground that seizure of the house violated the owners' right to due process under the Fifth Amendment. The district court denied the motion. Hour Holdings then filed a motion to reconsider, asking the court to amend its ruling in light of *United States v. James Daniel Good Property*, 971 F.2d 1376 (9th Cir.1992), *aff'd in relevant part*, — U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993),[1] which held that, absent exigent circumstances, due process requires notice and an opportunity to be heard before the seizure of real property subject to civil forfeiture. The district court denied the motion to reconsider, holding that *Good* could not be applied retroactively.

■ The jury entered a special verdict for the Government, finding that Hour Holdings had failed to prove that the house "was not purchased with proceeds traceable to narcotics transactions." SER 142. On appeal, we consider three questions: (1) whether the seizure of the house in this case violated the Fifth Amendment under *Good*; (2) whether the special verdict form was improperly worded and deprived Hour Holdings of a fair trial; and (3) whether the court gave a proper instruction on "apportionment" and the innocent owner defense.[2]

■ **A.** Today, the rule concerning the seizure of forfeitable real property is clear: Unless the Government makes a showing of exigent circumstances, it must provide preseizure notice and a meaningful opportunity to be heard. *United States v. James Daniel Good Real Property*, — U.S. ——, ——, 114 S.Ct. 492, 505, 126 L.Ed.2d 490 (1993). Thus, the Government ordinarily must wait until after an adversarial hearing and the entry of a forfeiture judgment before seizing a home. *Id.* at ——, 114 S.Ct. at 504. The rule was not so clear, however, in November of 1990, when DEA agents seized the house on Big Rock Drive; if anything, our cases at that time approved the ex parte procedures employed by the Government in this case. *See United States v. Tax Lot 1500*, 861 F.2d 232, 236 (9th Cir.1988) (ex parte proceedings before a magistrate "sufficiently cured any possible constitutional defect").

■ The good news for Hour Holdings, however, is that *Good* applies retroactively. The rule governing the retroactive application of new rules announced in civil cases was long in the distillation. *Compare American Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (O'Connor, J., plurality opinion) (endorsing the factored analysis originally established in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)) *with James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (Souter, J., plurality opinion) (endorsing the

1. Our *Good* opinion was filed on April 24, 1992, two weeks before Hour Holdings filed its original motion to dismiss the complaint. While this case was pending on appeal, the Supreme Court affirmed our holding in *Good* that the seizure violated the Fifth Amendment, but reversed on another issue and remanded.

2. In its brief, the government argued that the notice of appeal does not confer jurisdiction to consider the Fifth Amendment violation because it does not designate the precise order from which Hour Holdings intended to appeal, namely the order denying Hour Holdings' motion to suppress. However, as the government conceded at oral argument, the notice identified the final forfeiture judgment, which fairly apprised the Government of the substance of the appeal, and the Government had an opportunity to fully brief the issue. Such notice is not deficient. *Meehan v. County of Los Angeles*, 856 F.2d 102, 105 (9th Cir.1988); *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 451 (9th Cir.1983).

rule developed for criminal cases in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). But it is now clear that a new rule of law applies retroactively to civil cases on direct review or those not yet final if it is applied to the parties in the case in which it is announced. *Harper v. Virginia Dep't of Taxation,* —— U.S. ——, ——, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993). *Good* therefore applies retroactively to the seizure in this case, because the Court in *Good* remanded for an application of its holding to the parties before it. *Good,* —— U.S. at ——, 114 S.Ct. at 505; *accord United States v. One Parcel of Real Property, Located at 9638 Chicago Heights,* 27 F.3d 327, 329 (8th Cir.1994).

■ The Supreme Court in *Good* held the following procedures to be illegal: "[A] United States Magistrate Judge found that the Government had established probable cause to believe Good's property was subject to forfeiture ... [and a] warrant of arrest *in rem* was issued, authorizing seizure of the property.... The Government [then] seized the property ... without prior notice to Good or an adversary hearing." *Good,* —— U.S. at ——––——, 114 S.Ct. at 497–98. Substituting only "Hour Holdings" for "Good," that is precisely what happened here. The seizure in this case therefore violated the Fifth Amendment.

■ This does not end our inquiry, however, because the question remains what remedy is available. There is a split of authority on this issue. The Eighth Circuit has held that the appropriate remedy for the illegal seizure of forfeitable real property under *Good* is dismissal of the forfeiture action, with leave to file a new action if the statute of limitations has not run. *See One Parcel of Real Property, Located at 9638 Chicago Heights,* 27 F.3d at 330. The Second Circuit has followed the general rule that the "illegal seizure of property, standing alone, will not immunize that property from forfeiture," and held that the only remedy for an illegal sei-

zure of forfeitable property under the Fifth Amendment is suppression of any evidence impermissibly obtained as a result of the seizure. *United States v. Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258, 1265–66 (2d Cir.1989).

We have already visited this question, in *Good* itself, and sided with the Second Circuit. We noted that "the violation of Good's due process rights need not invalidate the forfeiture. The mere fact of the illegal seizure, standing alone, does not immunize the [seized] goods from forfeiture." *Good,* 971 F.2d at 1384 (internal quotation marks omitted); *accord United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1065 (9th Cir. 1994) (seized property not immune from forfeiture, but it may not be introduced as evidence). We therefore held that the Fifth Amendment only requires the exclusion of the illegally seized evidence at trial, with one additional twist: The Government is held responsible for any "rents accrued during the illegal seizure." *Good,* 971 F.2d at 1384. This holding remains good law; the Supreme Court affirmed *Good*'s basic holding—that the seizure violated the Fifth Amendment— without addressing whether this remedy was appropriate, and only remanded the case "for further proceedings consistent with this opinion." *Good,* —— U.S. at ——, 114 S.Ct. at 507.[3]

■ The district court thus should have suppressed all evidence the DEA found during the illegal seizure of the house on Big Rock Drive. The DEA discovered just two pieces of evidence during the seizure of the house: the $99,000 in stained, musty cash found rehydrating next to a humidifier in the main bedroom, and the secret storage compartment built into one of the closets. None of the other evidence presented at trial was obtained as a result of the illegal seizure. With respect to the proceeds theory, for instance, the Government called Goldman (whom the DEA tracked down long before seizing the house) to testify that he had dealt

---

**3.** We note that the Government permitted Greg Allen to continue living in the house as a caretaker and that Hour Holdings never required Allen or Santulli to pay rent while they lived in the house. These are circumstances the district court should take into account in calculating what, if anything, the Government must pay Hour Holdings as compensation for the illegal seizure.

drugs with Allen, that the sale of the house was tied to the sale of a large quantity of marijuana, that when Goldman had owned the house he had maintained title in his mother's name to disguise his ownership, and that Allen had established Hour Holdings as a similar scheme for disguising the fact that the house had been purchased with drug proceeds.

The Government's case on the facilitation theory, on the other hand, rested almost entirely on the illegally seized evidence; indeed, the Government only amended its complaint to include the facilitation theory after the illegal seizure of the house. Nevertheless, as the special verdict form amply illustrates, the jury found against Hour Holdings solely on the proceeds theory, not on the facilitation theory. SER 142. The Government established probable cause to believe the house had been purchased with the proceeds of drug transactions (without resort to any illegally seized evidence), and Hour Holdings failed to carry its burden of convincing the jury that its interest was not forfeitable. This failure of proof can in no way be attributed to the introduction of the illegally seized cash or Goldman's testimony about the secret compartment;[4] that evidence bore no relation to Hour Holdings' principal contention, which was that the partners had purchased their interest with legitimate funds, that they did not know Allen's share of the investment came from drug

proceeds, and that in any event they had bought out Allen's interest in the property.

Exclusion of the tainted evidence thus would not have changed the outcome at trial. It would have crippled the Government's case on the facilitation theory, but it would have had no effect on the verdict on the proceeds theory. The failure to suppress the illegally seized evidence was thus harmless, and if the trial had been otherwise free of error, the verdict on the proceeds theory would have to stand.

**B.** We must nevertheless order a new trial because of defects in the special verdict form and instructions presented to the jury. The first question on the verdict form asks, "Has claimant Hour Holdings, Ltd. proved by a preponderance of the evidence that defendant real property ... was not purchased with proceeds traceable to narcotics transactions?" SER 142. There is a space to mark either "yes" or "no" and the following instruction: "If you have answered the question 'yes', then answer question number 2. If you have answered the question 'no', sign and date this verdict form." *Id.* The five remaining questions on the verdict form, written in similar format, relate to the heart of Hour Holdings' claim, which was that (1) its interest in the property was not forfeitable because it had been purchased with legitimate funds, and (2) that Hour Holdings was an innocent owner of the property. *See* 21 U.S.C. § 881(a)(6) & (7) (precluding forfeiture of the property of innocent owners).[5]

---

4. Indeed, though Hour Holdings contends that the instructions on the proceeds theory and the innocent owner defense were defective, *see* section C *infra*, it does not argue that the evidence fails to support the jury's verdict on the proceeds theory.

5. The verdict form reads in full:

> We the jury in the above-entitled cause unanimously find as follows on the issues presented:
>
> (1) Has claimant Hour Holdings, Ltd. proved by a preponderance of the evidence that the defendant real property located at 20832 Big Rock Drive, Malibu, California was not purchased with proceeds traceable to narcotics transactions?
>
> _____ _____
> yes no

> If you have answered the question "yes", then answer question number 2. If you have answered the question "no", sign and date this verdict form.
>
> (2) Has claimant Hour Holdings, Ltd. proved by a preponderance of the evidence that the funds contributed by the limited partners of claimant went to purchase the defendant real property located at 20832 Big Rock Drive, Malibu, California?
>
> _____ _____
> yes no

> If you have answered the question "yes", then answer question number 3. If you have answered the question "no", sign and date this verdict form.
>
> (3) Has claimant Hour Holdings, Ltd. proved by a preponderance of the evidence that

The district court has broad discretion in deciding whether to send the case to the jury for a special or general verdict. Fed.R.Civ.Proc. 49(a). This discretion extends to determining the content and layout of the verdict form, and any interrogatories submitted to the jury, provided the questions asked are reasonably capable of an interpretation that would allow the jury to address all factual issues essential to judgment. *Id.; In re Hawaii Federal Asbestos Cases*, 871 F.2d 891, 894 (9th Cir.1989) (citing *R.H. Baker & Co. v. Smith–Blair, Inc.*, 331 F.2d 506, 508 (9th Cir.1964)).

The problem with the verdict form here is obvious: If the jury found that *any* money used to purchase the house was traceable to narcotics transactions, the answer to the first question would have to be "no" and the jury was instructed to return its verdict and the case was over. There was no way for the jury to determine whether the property was also subject to forfeiture under a facilitation theory, or to consider Hour Holdings' argument, based directly on section 881(a)(6), that its interest in the property

the defendant real property located at 20832 Big Rock Drive, Malibu, California was not used, or intended to be used, in any manner or part to facilitate narcotics transactions?

_____ yes _____ no

If you have answered the question "yes", then answer question number 4. If you have answered the question "no", sign and date this verdict form.

(4) Has claimant Hour Holdings, Ltd. proved by a preponderance of the evidence that it had no knowledge that the defendant real property located at 20832 Big Rock Drive, Malibu, California was used, or intended to be used, in any manner or part to facilitate narcotics transactions?

_____ yes _____ no

If you have answered the question "yes", then answer question number 5, if you have answered the question "no", sign and date this verdict form.

(5) Has claimant Hour Holdings, Ltd. proved by a preponderance of the evidence that it did not consent to the use or intended use

was not forfeitable because it was purchased with legitimate assets. *See infra* Section C. Indeed, the jury didn't even reach the question whether Hour Holdings was an owner of the property at all, much less an innocent owner; the verdict form asked the jury to determine whether the limited partners contributed any money toward the purchase of the house, but only if the jury first determined that the property was not purchased with drug proceeds.[6] SER 142 (question 2).

The verdict form also deprived Hour Holdings of its innocent owner defense. It specifically required the jury to consider whether Hour Holdings was an innocent owner if it found the property forfeitable under a facilitation theory, *id.* (question 4), but it did not require the jury to determine whether Hour Holdings was an innocent owner if it found the property forfeitable under a proceeds theory. Under this form, if only one tainted dollar was used to purchase the house (even if contributed by someone other than Hour Holdings and without the knowledge or permission of any of Hour Holdings' limited partners) the house would be completely forfeited to the Government. That is a clear

of the defendant real property located at 20832 Big Rock Drive, Malibu to facilitate narcotics transactions?

_____ yes _____ no

Answer question number 6 *only* if you answered questions 1, 2, 4, and 5 "yes".

(6) We the jury, unanimously find that _____ percent of the proceeds used to purchase the defendant real property located at 20832 Big Rock Drive, Malibu, California by the limited partners of claimant, Hour Holdings Ltd., was not traceable to narcotics transactions.

Dated: _____ _____

FOREPERSON

SER 141–44.

**6.** The Government tried to establish that the partners in Hour Holdings were "straw" owners and that they never in fact put forward any of their own money to buy the house. This is an interesting theory, but it does not remedy the defect in the verdict form; once the case was sent to the jury, Hour Holdings was entitled to have the jury determine whether it had purchased its interest with legitimate funds or was an innocent owner of the property.

misstatement of the law. Section 881(a)(6) affords Hour Holdings an innocent owner defense, as did the jury instructions,[7] which informed the jury that Hour Holdings' interest in the house was not subject to forfeiture if Hour Holdings could prove, among other things, that none of its limited partners "had ... knowledge of an illegal source of money used to purchase the ... property." ER 376.

Because the verdict form did not "fully and fairly present[ ] to the jury the issues it was called upon to decide," *Mateyko v. Felix,* 924 F.2d 824, 827 (9th Cir.1990), we reverse and remand to afford Hour Holdings an adequate opportunity to present its case.

 **C.** The instructions on the proceeds theory and the innocent owner defense are also defective in one significant respect.[8] The instructions erroneously explain to the jury that Hour Holdings must prove *all* the following facts in order to establish that its interest in the house was not subject to forfeiture:

(1) that [Hour Holdings] acquired an ownership interest in the defendant real property with an independent, innocent and legitimate source of funds;

(2) that such ownership interest was legitimate, and [Hour Holdings] was not merely a "straw" owner set up to conceal the financial affairs or illegal dealings of someone else;

(3) that [Hour Holdings] had no knowledge of an illegal source of money used to purchase the defendant property;

(4) that [Hour Holdings] had no knowledge of the use, or intended use, of the property to assist, in any way, an illegal narcotics transaction;

(5) that [Hour Holdings] was not knowingly involved in any illegal activity relating to

the defendant property or taking place on the defendant property;

(6) that [Hour Holdings] had no knowledge of any illegal activity relating to the defendant property or taking place on the defendant property;

(7) that [Hour Holdings] did not consent to any illegal activity relating to the defendant property or taking place on the defendant property.

ER 376–77 (Instruction 31). Even if Hour Holdings could prove that it had not purchased its interest in the property with "proceeds traceable" to illegal drug transactions (requirement two), that interest would nevertheless be forfeitable unless Hour Holdings could also prove it was an innocent owner of the property (requirement three). Conversely, if Hour Holdings or its limited partners used illegitimate funds to purchase the house, even unwittingly, the limited partners could not establish an innocent owner defense. The instructions thus require both factors—innocent ownership and the use of legitimate funds—before either defense to forfeiture could be established. This instruction was reinforced by the verdict form (reproduced in footnote 5), which only required the jury to calculate the portion of the property purchased with legitimate funds if the jury first determined that the property was not purchased with drug proceeds (question one), that none of the money the limited partners put forward was drug money (question two), that the property was not used to facilitate drug transactions (question three), and that Hour Holdings did not know of or consent to the use of the property to facilitate narcotics transactions (questions four and five). SER 142–44.

 The instruction on innocent ownership misstates the law, at least with respect to the proceeds theory under 21 U.S.C. § 881(a)(6).[9] Even those who purchase as-

---

7. The instruction on innocent ownership is defective in other respects. *See* section C *infra.*

8. We address this issue because it's likely to arise again on remand.

9. Section 881(a)(6) provides in full:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to

sets with money derived from drug transactions can be innocent owners, so long as they do not know the illegal source of the funds. *United States v. 92 Buena Vista Ave.*, —— U.S. ——, ——, 113 S.Ct. 1126, 1134, 122 L.Ed.2d 469 (1993) (Stevens, J., plurality opinion). Indeed, it is only after an owner is shown to have purchased with illegitimate assets that the innocent owner defense even becomes an issue. Under the instruction, however, the innocent owner exception in section 881(a)(6) would only permit a claimant to preserve from forfeiture its interest in a piece of property if the claimant could first prove that the interest was not subject to forfeiture, *i.e.*, that it was not purchased with drug proceeds.

■ The statute does not require this absurd result: The innocent owner exclusion from forfeiture comes into play only in those situations, admittedly rare, where a purchaser uses drug money to buy an asset, or an interest in an asset, without knowing the illegal source of the money. The clearest example of this would be a gift: "That the funds respondent used to purchase her home were a gift does not ... disqualify respondent from claiming that she is an owner who had no knowledge of the alleged fact that those funds were 'proceeds traceable' to illegal sales of controlled substances." *Id.* Thus, to establish that it was an innocent owner of the property, Hour Holdings need only prove it purchased without knowing that the funds it used were the proceeds of a drug transaction; it need not also prove that the money it put forward came from legitimate sources.

The jury instruction and verdict form also suffer from the converse infirmity: If Hour Holdings purchased its interest in the house entirely with legitimate funds, but Allen used drug money to buy his interest, the instruction would require the forfeiture of the entire house, including Hour Holdings' separate, legitimately purchased interest, unless Hour Holdings could also prove itself an innocent owner. ER 376. This correctly interprets the forfeiture statute only with respect to the "facilitation theory" under 21 U.S.C. § 881(a)(7),[10] not the "proceeds theory" under 21 U.S.C. § 881(a)(6).

■ Under the facilitation prong of the forfeiture statute, property is subject to forfeiture "in the whole" if it is "used, or intended to be used, in any manner or part ... to facilitate the commission" of a narcotics offense. 21 U.S.C. § 881(a)(7). The statute makes no exception for that portion of the property purchased with legitimate funds: If any part of the property is used to facilitate a drug transaction, the entire property is forfeitable, *see 4492 South Livonia Road*, 889 F.2d at 1270 ("§ 881(a)(7) by its explicit and broad terms allows for the forfeiture of entire tracts"), except any interest belonging to an innocent owner—one who can prove that the property was used to facilitate narcotics transactions without his knowledge or consent, *see* 21 U.S.C. § 881(a)(7) (excepting innocent owner's property from forfeiture); *United States v. 1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487, 491 (9th Cir. 1990). The Eighth Amendment limits the extent to which property can be forfeited under section 881(a)(7), *see Austin v. United States*, —— U.S. ——, ——, 113 S.Ct. 2801,

such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

10. Section 881(a)(7) provides in full:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

 (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any

appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

2812, 125 L.Ed.2d 488 (1993) (mandating proportionality), but section 881(a)(7) itself contains no such limitation.

The same is not true of section 881(a)(6), as a simple matter of statutory interpretation. Section 881(a)(6) provides that all money exchanged in a drug transaction and "all proceeds traceable to such an exchange" are subject to forfeiture. 21 U.S.C. § 881(a)(6). Section 881(a)(6) also contains an innocent owner exception: Proceeds are forfeitable only "to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." *Id.* The last portion of this section—the innocent owner defense—is far from lucid, but that should not affect our interpretation of the straightforward language that precedes it: Before even addressing the innocent owner defense, we must determine that an asset constitutes "proceeds traceable" to a narcotics transaction. Any interest in property purchased with illegitimate assets is forfeitable, but any interest purchased with legitimate assets, even the legitimate assets of a drug dealer or someone who knows they are doing business with a drug dealer, is not forfeitable because it is not "proceeds traceable to" a drug transaction. *United States v. One 1980 Rolls Royce*, 905 F.2d 89, 91 (5th Cir.1990); *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 639–40 (1st Cir.1988). *But see United States v. One Single Family Residence*, 933 F.2d 976, 981 (11th Cir.1991).

Thus, there are at least two ways a claimant can salvage property from forfeiture under section 881(a)(6), neither of which was permitted by the instruction in this case. First, the claimant can show that its interest in the property was not purchased with the proceeds of a drug transaction. Second, even if the claimant's interest was purchased with illicit funds, the claimant can redeem its interest from forfeiture by showing innocent ownership, *i.e.*, the claimant can show it did not know the funds used to purchase its interest in the property were the proceeds of

a drug transaction. The verdict form and instructions in this case improperly conflate these two distinct claims.

\* \* \* \* \* \*

Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.