**UNITED STATES of America, Plaintiff,**

v.

**ONE URBAN LOT NUMBER 14,126, Defendant.**

**Civil No. 91–2129(DRD).**

United States District Court, D. Puerto Rico.

Sept. 30, 1996.

---

Miguel A. Fernandez–Torres, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, for plaintiff.

Francisco M. Lopez–Romo, Old San Juan, PR, for defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

The complaint in the above captioned case was filed on September 16, 1991. Because the government alleges that the defendant properties are the product of drug trafficking transactions subject to forfeiture under two grounds, 21 U.S.C. § 881(a)(6) and 18 U.S.C. 981 et seq., the defendant real estate property and two automobiles were forfeited as properties involved in money laundering transactions.[1] The claimant José González Florido pled guilty to having possessed cocaine with intent to distribute in violation of 21 U.S.C. 881 and was sentenced to seventy-eight (78) months of imprisonment. Seizure of the defendant real estate property was accomplished on September 16, 1991, based on an ex-parte seizure warrant issued by a federal Magistrate Judge in a miscellaneous proceeding. The seized real estate property was a residence located at Paseo Las Vistas C–76, Rio Piedras, P.R.[2]

Prior to the trial in the instant case, the Court held that the government had established probable cause for the forfeiture of the defendant property under 19 U.S.C. 1615, thus shifting the burden of proof to the claimants to establish by a preponderance of

---

1. The forfeiture of the automobiles is not being challenged by the claimants.

2. The property is described as One Urban Lot No. 14,126 located at C–76 Paseo Las Vistas Urbanization Las Cumbres, Cupey Alto Ward, Rio Piedras, Puerto Rico.

the evidence that they had acquired the property seized with legitimate income and not with money derived from drugs. *United States v. 250,000.00 in U.S. Currency,* 808 F.2d 895, 900 (1st Cir.1987).

Trial on the matter was held on September 24, 1996. Prior to the hearing, claimants filed a motion based on the case of *United States v. James Daniel Good Real Property* 510 U.S. 43, 61–63, 114 S.Ct. 492, 505, 126 L.Ed.2d 490 (1993), wherein the Supreme Court held that unless the government makes a showing of exigent circumstances, pre-seizure notice and a meaningful opportunity to be heard must take place prior to seizure. In the instant case said procedure was not followed; instead, the seizure was performed pursuant to a seizure warrant issued by a Magistrate Judge. Prior to *United States v. James Daniel Good Real Property,* ex parte proceedings before a Magistrate Judge were sufficiently valid. *See, e.g., United States v. Tax Lot 1500,* 861 F.2d 232, 236 (9th Cir.1988).

■ The Court must first decide whether the holding in *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, should be applied retroactively. As to retroactivity, the Supreme Court has held that a new rule of civil law applies retroactively to all civil cases on direct review or those not yet final if the ruling is applied to the parties in the same case in which the rule is announced. *Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 95–96, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993); *United States v. Real Property Located 20832 Big Rock Drive,* 51 F.3d 1402, 1405–1406 (9th Cir. 1995); *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). Since the holding of *U.S. v. James Daniel Good Real Property* was ordered applied on remand to the litigating parties, said ruling applies to the instant case which is a "not yet final case." *United States v. Real*

*Property Located 20832 Big Rock Drive,* 51 F.3d at 1406.

■ Our inquiry, however, does not end by accepting the retroactivity of the rule. Although the Court holds that José E. González–Florido's Fifth Amendment due process rights were violated, "the violation of due process rights does not invalidate the forfeiture." *United States v. Real Property Located in El Dorado, Cal.,* 59 F.3d 974, 980 (9th Cir.1995) quoting from *United States v. James Daniel Good Property in the name of James Daniel Good,* 971 F.2d 1376, 1384 (9th Cir.1984) *rev'd in part on other ground* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). *See also United States v. All Assets and Equipment of West Side Building Corp.,* 58 F.3d 1181 (7th Cir.1995). Instead, remedies are potentially in order, including "awards of rents," "loss of enjoyment," and "loss of use." *United States v. Real Property Located in El Dorado, Cal.* (supra) at 980–981. Examining the record of the case, the Court finds that on the same date that the seizure was made, the property was being abandoned by the claimant/owner José E. González–Florido and his common law wife, Libby Medina Torres,[3] who is also a claimant. Hence, they have suffered no damages. Further, the Court finds that the claimants' due process challenge to the forfeiture, specifically that the ex parte warrant was invalid pursuant to *United States v. James Daniel Good Real Property* was not raised in a timely fashion. Instead of raising it at trial, the claimants should have made their arguments at any of the various conferences held in the case between the publishing of the opinion and the holding of the trial.

■ As stated before, on June 6, 1992, on a request to shift the burden of proof, the then presiding Judge, Hon. Juan M. Pérez Giménez, noted and granted the request. Claimants have not complied with their burden. Claimant José E. González–Florido, unemployed[4] and not having filed any income tax returns with the Commonwealth of Puerto Rico prior to 1991, claims to have won

3. Libby Medina Torres abandoned her claim as a creditor in this case, consisting of a $114,000.00 third mortgage note over the seized property.

4. González–Florido did not work the year prior to his arrest; he worked last as a pilot in 1989–90. *Deposition,* p. 8.

the lottery and received an award in the amount of $150,000.00. He also claims he used the money to partially pay for the seized property that is the object of this case. Libby Medina Torres also allegedly won the P.R. lottery in a separate, subsequent drawing, and also used said money to pay for the seized property. Although the property was purchased with money from both González–Florido and Medina Torres, it was exclusively registered in the name of González–Florido. Since González–Florido and Medina Torres were not officially married, Libby Medina Torres received at the closing a $114,000.00 mortgage note in exchange for her contribution.[5]

The evidence reveals the following sequence of events: On April 3, 1991, González–Florido won the lottery for $150,000.00. On April 15, 1991, he was issued a check for $150,000.00. On May 5, 1991, the claimants, González–Florido and Medina Torres, signed an option sales contract for a property to be purchased for $228,000.00. The claimants delivered to the realtor $15,000.00 in cash as option money on or around May 5, 1991. On May 8, 1991, Libby Medina Torres hit the lottery for $76,000.00. On May 13, 1991, the lottery issued a check for $76,000.00 to Libby Medina Torres. On May 15, 1996, the closing date, both lottery checks were endorsed to purchase checks used at the closing. At closing, in addition to the $15,000.00 previously paid as option money, two checks were produced: one for $84,583.37 to the sellers, and another for $123,416.63 to cancel an existing mortgage.

The Court is not persuaded that the money used to purchase the property was legitimate. Mr. González–Florido was unemployed, hired the year before as a pilot by Mr. Gualberto Ilarasa, who was also under drug smuggling investigation at the time. He was reared by his stepfather Vladimir Collazo, who was convicted of trafficking in cocaine. Further, the government produced evidence by a local Treasury Department Agent working at the Puerto Rico Lottery who testified that local winners of lottery tickets are commonly approached by major wholesalers of lottery tickets ("acaparadores") when they are in the process of claiming their winnings. The winners in line to cash their tickets are encouraged to leave the line and subsequently the winners are not seen cashing their tickets. An inference can be made that winning tickets of the lottery in Puerto Rico can be acquired by third parties, through the wholesalers ("acaparadores"). The Court further notes that Libby Medina Torres stated to the realtor on or before May 5, 1991, that she was going to pay for the property with money won from the lottery, and that although Mr. González–Florido was already a winner, she did not hit the jackpot until May 8, 1991. Libby Medina Torres thus predicted her winning the lottery at odds of 50,000 to 1.[6] The Court does not overlook that González–Florido, unemployed at the time, also produced $15,000.00 in cash on May 5, 1991, as option money of unexplained origin since he did not cash the $150,-000.00 check until May 15, 1991. The Court further finds an extraordinary circumstance in that two closely related citizens (man and common law wife) could hit the Puerto Rico lottery jackpot in around one month of each other in separate drawings (April 3, 1991, and May 8, 1991). The story is simply unbelievable and thus the Court is not persuaded.

The Court, therefore, adjudges and decrees that the property of One Urban Lot Number 14,126 and the two automobiles subject to forfeiture in the instant case are forfeited to the United States of America as proceeds of drug transactions pursuant to 21 U.S.C. 851(a)(6) and 18 U.S.C.1956, all authorized under 18 U.S.C. 981(a)(1)(A), and to subsequently be disposed according to law.

IT IS SO ORDERED.

## JUDGMENT

This Court having entered on this same date an Opinion and Order, **judgment** is entered adjudging and decreeing that the

---

5. The $114,000.00 was one half of the value of the purchased property, which was priced at $228,000.00.

6. The Court takes judicial notice under Rule 201 of Evidence that there are 50,000 tickets in every lottery drawing in Puerto Rico. Libby Medina Torres won $76,000.00 in the Mothers Day's Extraordinary Drawing of May 8, 1991.

Property of One Urban Lot No. 14,126 as further described in the caption of the case; One 1991 Toyota Land Cruiser, as further described in the caption of the case, and One 1985 BMW Model 635 M6, as further described in the caption of the case, all with all appurtenances and attachments thereon are forfeited to the United States of America pursuant to 21 U.S.C. 881(a)(6) and 18 U.S.C. 1956 as authorized under 18 U.S.C. 981(a)(1)(A) and to subsequently be disposed according to law.

IT IS SO ORDERED.