**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

LEOLA M. MARSH,
Claimant-Appellant,

and

REAL PROPERTY IN MECKLENBURG
COUNTY, NORTH CAROLINA, KNOWN
AS LEOLA'S PLAZA, LOCATED AT 1501
WEST BOULEVARD,AND SAFETY
DEPOSIT BOX 148, WILKINSON
BOULEVARD, OFFICE OF FIRST CITIZENS
BANK,
Defendant.

No. 94-2232

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CA-89-344-3-MU)

Argued: July 10, 1996

Decided: January 31, 1997

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Widener wrote the opinion, in which Judge Russell joined.
Judge Hall wrote a separate opinion concurring in part and dissenting
in part.

**COUNSEL**

**ARGUED:** C. Murphy Archibald, Charlotte, North Carolina, for Appellant. B. Frederic Williams, Jr., Assistant United States Attorney, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Leola Marsh appeals from a final order of the United States District Court for the Western District of North Carolina entering judgment of civil forfeiture of real property in favor of the United States and denying her motion for reconsideration. She argues that the government's failure to provide her with notice and a hearing before it seized the property violated her due process rights. Additionally, Mrs. Marsh argues that there was not probable cause for the initial seizure, and she raises other objections. For the reasons below we affirm in large part, but vacate in part, and remand for further proceedings consistent with this opinion.

I.

The procedural history of this case is long and involved. The history and voluminous evidence is well summarized in the magistrate judge's memorandum and recommendation as adopted and published by the district court in United States v. Leola's Plaza, 814 F. Supp. 468, 470-484 (W.D.N.C. 1993). Accordingly, we relate only the essential chronology of this litigation.

On August 31, 1989 the United States Attorney for the Western District of North Carolina filed for and obtained a warrant of arrest in rem for Leola's Plaza. Pursuant to 21 U.S.C. § 881(a)(6) and (a)(7) the warrant was based on probable cause stated in the complaint that the property was acquired with the proceeds of drug trafficking by one Leroy Ragin, Mrs. Marsh's nephew.

2

The warrant of arrest in rem was based on the sworn statements of IRS and FBI agents. The government seized the property on September 1, 1989. The government gave notice to potential claimants, both personally and through newspaper publication, and recorded a lis pendens as required by 21 U.S.C. § 881(d), 18 U.S.C. § 981 (d), the relevant procedural laws at 19 U.S.C. §§ 1602 et seq., and the Supplemental Rules for Certain Admiralty and Maritime claims.

Leola's Plaza is a strip mall in Charlotte, worth about $300,000, titled to the appellant Leola Marsh, and was built in 1986. At the time the government initiated the forfeiture proceedings, Mrs. Marsh operated her own business as a beautician in one of the seven units of the mall. Mrs. Marsh's tax returns show that her adjusted gross income in 1986 and for the preceding five years was a total of $16,215, for an average of $2,703. Interrogatories, however, revealed that from 1977 to 1991 she spent $1,500 per month on "basic living expenses," with no indication of any supplementary nontaxable income. Ragin is currently serving a twenty-eight year prison term for money laundering and operating a continuing criminal enterprise in Charlotte, North Carolina.

On August 26, 1991 the United States filed a motion for summary judgment supported by a 97-page memorandum and two volumes of affidavits, documents, and exhibits. In particular, the evidence included: documents bearing Ragin's signature for construction contracts for Leola's Plaza and invoices showing $99,000 in payments for the construction; an appraisal for the U. S. Marshal showing normal cost of construction would be $268,569; IRS affidavits and bank records showing a source of funds for the plaza's construction was a corporation owned by Ragin; affidavits by a contractor that the construction site for Leola's Plaza at times looked like an armed camp.

Many of these documents resulted from the extensive discovery engaged in by both parties. From September of 1989 until the summary judgment hearing the magistrate judge heard several motions by both sides regarding the extent and pace of discovery. Both sides took depositions and posed interrogatories, and at least six hearings were held on such issues between October 18, 1989 and November 1991. Additionally, the attorneys engaged in status conferences with the

3

magistrate judge in order to balance the need for discovery with concerns regarding the then ongoing criminal trial of Ragin.

Mrs. Marsh filed a response to the summary judgment motion, unaccompanied by evidence, on October 31, 1991. On November 7, 1991 the government filed its reply arguing that Mrs. Marsh's response was inadequate under the standards for summary judgment. On the eve of the November 12, 1991 summary judgment hearing, as the district court related, "Marsh filed a quantity of documents without explaining how they relate[d] to any issue" of the summary judgment motion. The district court and the government became aware of these documents at the hearing.

The magistrate judge recommended summary judgment for the government and filed his memorandum and recommendation on February 14, 1992. Mrs. Marsh filed her objections to the recommendation on February 25, 1992, which she supplemented with documentary exhibits on March 31, 1992. The government replied on April 10, 1992, noting that the documents were not in the summary judgment record. On January 15, 1993 the district court rejected the objections and confirmed the memorandum and recommendation of the magistrate judge, thereby dismissing both Mrs. Marsh's claim and counterclaims, and forfeiting the defendant property.

Mrs. Marsh noted her first appeal on February 18, 1993. Acting on the judgment of the district court, the marshal's service attempted to collect rent from Mrs. Marsh at the fair market rate of $900 per month. Mrs. Marsh was only able to pay $200, the government says, and the marshal refrained from selling the property, but collected rent from the tenants in the plaza. On March 16, 1993, Mrs. Marsh moved for a stay of the decision, which the district court denied on March 18, 1993. On March 25, Mrs. Marsh filed a motion to stay the judgment which this court denied on April 16, 1993. On November 23, 1993 this court decided that the district court in affirming the magistrate judge's recommendation had failed to state whether it had conducted a de novo review of the report. Accordingly, we remanded the case requiring either confirmation that the proper review had been performed, or the performance of such review.

On remand, the court referred the matter to a magistrate judge by a May 31, 1994 order. That same order found that the property had

4

been seized in 1989 contrary to the December 13, 1993 decision of United States v. James Daniel Good Real Property , 510 U.S. 43 (1993), which required notice and the opportunity for a pre-seizure hearing for real estate. On June 1, 1994 the government filed a motion and proposed order pertaining to the seized property which the government states was standard in the district for seizure cases following Good. In its motion to conform the warrant of arrest in rem to the Good decision the government stated that it had not done so earlier, as it had in other cases involving Good violations, because "a judgment had been entered after Mrs. Marsh had a full opportunity for a hearing." The magistrate judge signed the order, and it was filed June 2, 1994. One month later on July 1, 1994 Mrs. Marsh requested that the magistrate judge recuse himself due to his earlier involvement in the U. S. Attorney's Office in the case against Ragin. On July 12, 1994 the magistrate judge recused himself from the matter.

On August 10, 1994 the original district court judge, in response to this court's mandate, confirmed that he had done a de novo review of the magistrate judge's memorandum and recommendation. Accordingly, the district court on August 19, 1994 entered judgment incorporating by reference the original grant of summary judgment by the district court. Mrs. Marsh filed Rule 59 and 60 motions for relief of judgment and reconsideration on August 29, 1994 and the government responded September 13. On September 16 Mrs. Marsh replied, and on February 3 the district court denied the motions for reconsideration. Mrs. Marsh appealed pro se on March 3, 1995, and we ordered that Mrs. Marsh secure counsel to formally brief and argue her appeal.

II.

On December 13, 1993 United States v. James Daniel Good Real Property, 510 U.S. 43, 59 (1993), established that in civil forfeiture proceedings, unless the Government establishes there were exigent circumstances, Fifth Amendment Due Process concerns require the government to provide both pre-seizure notice and a meaningful opportunity to be heard. The Court noted that:

> [f]airness can rarely be obtained by secret one-sided determination of facts decisive of rights. . . . No better

5

> instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.

Good, 510 U.S. at 55 (quoting Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 170-172 (1951) (Frankfurter, J., concurring) (footnotes in original omitted)). Good underscored that not only is seizure unnecessary to obtain jurisdiction in rem over a res (Good, 510 U.S. at 57-58 (citing Rule E(4)(b), Supplemental Rules for Certain Admiralty and Maritime Claims)), but that seizure is not required to achieve the goals of § 881(a)(7) of preventing sale, destruction, or further use of the property for illegal purposes prior to the actual forfeiture. Good, 510 U.S. at 58. Absent exigent circumstances, the filing of a lis pendens (see 28 U.S.C. § 1964) or the use of a restraining order will normally suffice to protect these legitimate interests of the Government. Good, 510 U.S. at 58.

Here the September 1, 1989 seizure of Leola's Plaza predated the Good decision. Hence, the government acted in compliance with the then existing law by seizing the rents and property only after obtaining a warrant of arrest in rem based on an ex parte showing of probable cause before a neutral magistrate judge. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663 (1994).

There can be no doubt that the change in the law brought about by Good applies here, given that this civil matter was winding its way through direct appeal at the time of the Good decision. See Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 96-97 (1993) (new rule of law applies to pending civil cases on direct appeal). Other circuits have given effect to Good under almost identical circumstances. See, e.g., United States v. All Assets and Equipment of West Side Building Corp., 58 F.3d 1181, 1191 (7th Cir. 1995); United States v. Real Property Located at 20832 Big Rock Drive, 51 F.3d 1402, 1405-6 (9th Cir. 1995); United States v. Certain Real Property Located at 16510 Ashton, 47 F.3d 1465, 1470 (6th Cir. 1995).

III.

The circuits are not in agreement as to the appropriate remedy where an individual did not receive both notice and a hearing before

6

the seizure as required by Good. See United States v. All Assets and Equipment of West Side Building Corp., 58 F.3d 1181, 1193 (7th Cir. 1995). Mrs. Marsh urges that we follow the Eighth and Eleventh Circuits' rule that a Good violation requires the dismissal of the forfeiture action. United States v. 2751 Peyton Woods Trail, 66 F.3d 1164 (11th Cir. 1995); United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, 27 F.3d 327, 330 (8th Cir. 1994). We note, however, that both of these courts permit a new action if timely.

We find the view of the Seventh, Ninth, and Tenth Circuits more persuasive. Under their approach, a Good-violative seizure does not immunize the property from forfeiture. See United States v. All Assets and Equipment of West Side Building Corp., 58 F.3d 1181, 1193 (7th Cir. 1995); Real Property Located at 20832 Big Rock Dr., 51 F.3d at 1402, 1405 (9th Cir. 1995); United States v. 51 Pieces of Real Property Roswell N.M., 17 F.3d 1306 (10th Cir. 1994).

But the due process violation is not without remedy. The circuits not dismissing the action have tailored the remedy in a fashion commensurate with the violation of the rights of the claimant: the government must account for the profits or rent which it denied the claimant during the period of illegal seizure. We adopt this remedy. See, e.g., United States v. 51 Pieces of Real Property Roswell N.M., 17 F.3d 1306 (10th Cir. 1994).

In such an instance, as here, at the time Mrs. Marsh received an adversarial hearing on the forfeiture, she had received all the process she was due. Cf. Parratt v. Taylor, 451 U.S. 527, 543-44 (1981) (a claimant raising a federal due process claim who could have received redress through state remedies had received all process he was due).

Here, the initial seizure in violation of Good occurred on September 1, 1989 when the government obtained both the warrant for arrest in rem of the real property, and an order requiring the tenants at the plaza to pay their rents to the marshal. On November 12, 1991, after extensive discovery and litigation in which Mrs. Marsh was represented by counsel, the magistrate judge held a hearing on the summary judgment motion. Even if the litigation up to that date may, at some point, have met the due process requirement of Good, there can

7

be no doubt that the November 12, 1991 summary judgment hearing before the magistrate judge met Good's adversarial hearing requirement.

In seeking to limit the period in which the government illegally collected the rent, the government refers to an October 1989 hearing before the magistrate judge at which "[Mrs.] Marsh declined an opportunity for a hearing on probable cause."

A review of the record, however, does not support the statement that Mrs. Marsh declined an opportunity for a hearing on probable cause. A motion filed by the government on November 21, 1989 indicates that the United States did not request prompt action on a motion it had filed to dismiss the counterclaims of Mrs. Marsh, and the fact that the United States did not request prompt action on the motion was there indicated by the government to be "pursuant to an understanding between the United States and claimant Leola Marsh." A letter dated November 21, 1989 from Mrs. Marsh's attorney to the magistrate judge similarly indicated that it was his understanding that all motions filed would be held in abeyance pending efforts to resolve the matter informally. This is hardly a denial by Mrs. Marsh of an offered opportunity for a due process hearing.

Thus the government must account for the seizure of all rents derived from the shopping mall collected by marshal for the period beginning with the seizure on September 1, 1989 until the date of the summary judgment hearing on November 12, 1991 when Mrs. Marsh received all the process she was due. Cf. Cox v. Northern Virginia Transp. Comm., 551 F.2d 555, 558-559 (4th Cir. 1976) (period of accounting for due process violation for wrongful discharge terminated on the date of a district court hearing in which plaintiff had ample opportunity to obtain the process she was due).

IV.

Mrs. Marsh's remaining arguments may be briefly disposed of.

We affirm the forfeiture of the property for the reasons expressed by the district court in its adoption of the report and recommendation

8

of the magistrate judge found in United States v. Leola's Plaza, 814 F. Supp. 468 (W.D.N.C. 1993). There was overwhelming evidence that probable cause existed to seize the property because it was purchased with proceeds of drug dealing and involved in money laundering. The district court was correct in its finding that Mrs. Marsh did not produce evidence to prove a defense.

Mrs. Marsh did not raise the question of an excessive fine until she filed a motion for reconsideration after the district court's judgment was entered. Even if the motion had been timely filed, it was without merit. As before stated, the proof is overwhelming that the property was purchased as a laundering device for illegal drug money.

The suggestion of the government in its brief that exigent circumstances existed so as to justify the seizure of the property without a hearing is without merit. The fact that Mrs. Marsh had borrowed money on the property and that Ragin may have been aware of the investigation do not suffice.

We express no opinion on Mrs. Marsh's argument in her brief that a claim of First Citizens Bank is invalid. First Citizens Bank is not a party to this proceeding, and we decline to answer a question with respect to its claim in a proceeding to which it is not a party. Undoubtedly, Mrs. Marsh and the bank will find a way to present their differences to an appropriate court.

On remand, the district court should take appropriate action which is not inconsistent with this opinion.

The judgment of the district court is accordingly

AFFIRMED IN PART, VACATED IN PART, AND REMANDED .

HALL, Circuit Judge, concurring in part and dissenting in part:

First of all, if the issue be reached, I agree with the manner in which the majority has applied James Daniel Good here. An illegal initial seizure of property no more shields it from subsequent forfeiture than an illegal arrest immunizes a person from subsequent indictment or conviction.

9

I disagree, however, that we ought to apply James Daniel Good in this case at all. Unlike the claimant there, Mrs. Marsh raised no due process claim or defense in her answer or any prejudgment motion. On August 29, 1994, five years after the seizure, in a motion to reconsider the second entry of final judgment, Marsh first challenged the seizure's legality. I believe that this inordinate postdeprivation delay constituted a waiver of Marsh's predeprivation due process rights.

It is no answer to assert that James Daniel Good engendered the due process issue, thus possibly excusing the delay. The Supreme Court resolves the great legal issues of our day; it does not create them. The claimant in James Daniel Good had no trouble articulating the winning due process argument. Indeed, notwithstanding whether a given court would have agreed with that argument then, its simple premise -- a man ought to be able to defend his home before losing it -- struck such basic due process themes as to be almost self-evident. Just weeks after the seizure of Leola's Plaza, the Second Circuit adopted a predeprivation process rule very much like that later fashioned by James Daniel Good, United States v. 4492 Livonia Road, 889 F.2d 1258, 1264 (2nd Cir. 1989), and one of our First Circuit colleagues had previously argued, albeit unsuccessfully, for a similar result. Application of Kingsley, 802 F.2d 571, 582-583 (1st Cir. 1986) (Torruella, J., dissenting).

I am all for the majority's return-of-rents remedy where a citizen has stood on his rights and seen them trampled. I fear, though, that extending such relief to one who did not timely seek it is neither fair to the public nor feasible in practice. Citizens waive clearly established rights every day. How do we distinguish the long-ago forfeiture defendant who would have appeared and contested the seizure at a predeprivation hearing from the one who, knowing it futile, would have waived it? My guess is that we cannot.

The errors of the past, however regrettable, cannot always, and should not sometimes, be repaired. This is one of those times. I would affirm the judgment of the district court, and I respectfully dissent to the extent the majority has vacated it.

10