**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

N. JEROME WILLINGHAM, Administrator
of the estate of Nelson T. Hopkins,
deceased,
Claimant-Appellant,

and

ONE TRACT OF REAL PROPERTY WITH
BUILDINGS, APPURTENANCES AND
IMPROVEMENTS, LOCATED IN
JACKSONVILLE, ONSLOW COUNTY, NORTH

CAROLINA,AND BEING MORE
PARTICULARLY DESCRIBED IN DEED
RECORDED IN BOOK 282, PAGE 106, of
the Onslow County Registry, being
titled in the names of Nelson T.
Hopkins, James M. Hopkins, Obie
Hopkins, Rasa Lee Hopkins and
Varnell Hopkins Warren, and any and
all proceeds from the sale of said
properties,
Defendant,

OBIE HOPKINS; ALVIN MORRIS; VARNELL
HOPKINS WARREN,
Claimants.

No. 97-1191

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-94-123-7-BR3)

Argued: March 5, 1998

Decided: April 14, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and CLARKE,
Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Dolores Jones Faison, Jacksonville, North Carolina, for
Appellant. Stephen Aubrey West, Assistant United States Attorney,
Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie
Cole, United States Attorney, Anne M. Hayes, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jerome Willingham, the administrator of the estate of Nelson Hop-
kins, appeals the district court's grant of summary judgment for the
government on its civil forfeiture claim brought against certain real
property previously owned, in part, by Hopkins. For the reasons
stated herein, we affirm.

2

I.

This controversy began when the United States filed a complaint for the civil forfeiture of a building ("the Hopkins building") in Jacksonville, North Carolina. This building, which houses a convenience store and a restaurant on the first floor, and apartments on the upper floor, was owned by several persons, including Nelson Hopkins.[1] The government filed with its complaint an affidavit ("the Ackley affidavit"), which alleged that the Hopkins building was a major center of drug-related and other criminal activities in the downtown Jacksonville area.

After an ex parte review of the government's complaint and affidavit, a district court found probable cause and issued a warrant authorizing the government to arrest the property and search the premises, but not to take physical possession of the property until the owners were provided with notice of the action and an opportunity to be heard. In compliance with the warrant, the government searched the building -- discovering 59 grams of crack cocaine and arresting Hopkins' grandson and another individual in the process, J.A. at 64-66; served the warrant on the owners of the building; and posted a copy of the warrant on the property. The warrant apprised the building's owners that they had a right to a hearing.

Nelson Hopkins responded by requesting such a hearing. The magistrate judge who conducted the hearing understood such a pre-seizure hearing to be required under Supreme Court precedent, but believed the scope of that hearing limited to whether probable cause existed to believe the Hopkins building had been used or intended to be used to violate the federal drug laws. At the hearing, accordingly, the magistrate allowed Hopkins, through counsel, to cross-examine Special Agent Ackley, who had sworn out the government's affidavit, and otherwise to contest probable cause, but did not allow Hopkins to introduce evidence offered to establish that he did not know of, or consent to, the unlawful use of his property. The magistrate believed

_____

[1] Because the other owners have ultimately either waived their rights to contest the government's actions, or been recognized by the government as innocent owners with protected interests, this opinion discusses only the facts relevant to Hopkins' interest in the property.

3

that consideration of this question was unnecessary prior to <u>seizure</u>, and could be deferred until the <u>forfeiture</u> adjudication. After the hearing, the magistrate found the government had probable cause to seize the Hopkins building, and directed the marshals to do so.

Subsequently, the government moved for summary judgment on its foreclosure claim, relying in support of its motion primarily on the Ackley affidavit. Hopkins' estate**2** responded by attorney, and the government issued a reply. Shortly thereafter, Hopkins' attorney, who had been disbarred for misconduct apparently unrelated to this case, was ordered not to make further submissions in the case. Thereupon Hopkins' presumptive heirs filed notice of their intent to represent themselves in the action. The heirs explicitly "adopt[ed] all of the documents and positions filed and offered by [the previous attorney]." J.A. at 171. The district court then granted summary judgment for the government, the estate obtained a new lawyer, and this appeal followed.

II.

This case is controlled by binding circuit precedent. As that precedent makes clear,

> [i]n a civil forfeiture proceeding the government must show probable cause that the property is subject to forfeiture. Once the government has made this showing, the burden shifts to the claimant to prove by a preponderance of the evidence that the factual predicates for forfeiture have not been met. The claimant must prove that the property was not unlawfully used or that he did not know about or consent to the illegal use. If the claimant cannot produce any such evidence, summary judgment is properly granted to the government based on its showing of probable cause.

<u>United States</u> v. <u>7715 Betsy Bruce Lane</u>, 906 F.2d 110, 111 (4th Cir. 1990). Here, as the appellant properly conceded at oral argument, the

_____

**2** Nelson Hopkins died during the course of the proceedings, and was replaced as a party by Jerome Willingham, the administrator of Hopkins' estate.

4

government has introduced overwhelming evidence of probable cause. The Ackley affidavit included:

(1) notes from interviews with three drug convicts who had each (a) sold drugs inside the building, just outside the building, or both, (b) observed others buying and selling cocaine inside the building, just outside the building, or both, (c) stored cocaine or seen others store cocaine inside the building, and (d) perhaps most importantly, conducted drug deals or seen drug deals conducted openly in front of Hopkins;

(2) a review of 202 criminal reports on file with the city police department relating to incidents inside or immediately outside the Hopkins building over a four-and-a-half year period, indicating (a) that on 180 instances, the criminal activity was drug related, (b) that drugs were found in 83 instances, (c) that undercover officers or informants purchased drugs in 65 instances, (d) that on 29 occasions the criminal activity involved Nelson Hopkins and other family members, and (e) that the activity resulted in 169 arrests;

(3) information that a previous search of the Hopkins building had discovered five grams of cocaine, plastic baggies containing cocaine residue, and several firearms within an 18 inch vicinity of the cocaine, and that as a result of this search Hopkins was convicted of manufacture and possession of cocaine under North Carolina law, resulting in a suspended sentence and fine;

(4) reports that four detectives had each (a) observed activity consistent with drug trafficking in the Hopkins building, (b) observed drugs and drug paraphernalia inside and immediately outside the building, and (3) received information that Hopkins was involved in the drug trafficking inside the building;

(5) reports that while the building purported to contain a restaurant, much of the food kept in the building was unfit for

5

consumption, possibly suggesting that the restaurant was a sham; and

(6) miscellaneous other information from various narcotics investigations and confidential sources indicating that the center of cocaine distribution in downtown Jacksonville was located in and around the Hopkins building.

See generally J.A. at 23-32 (affidavit); id. at 182-85 (district court describing affidavit).

Given that the government had clearly established probable cause, the burden was on the Hopkins heirs to present evidence from which a jury could find, by a preponderance of evidence, either that the property had not been unlawfully used, or that Hopkins had not known about, or consented to, the illegal use. In attempt to meet this burden, the Hopkins heirs introduced (1) a statement by Hopkins' former lawyer asserting that Hopkins had always, prior to his death, maintained his innocence, had not assisted the use of his building for drug dealing, and had entered an "Alford Plea" in response to the state drug charge discussed above, J.A. at 161-62; (2) a bare assertion of innocent ownership made by Hopkins in response to an interrogatory, J.A. at 163; (3) sworn statements by two of the three drug dealers cited in the Ackley affidavit substantially undermining their statements to Ackley, J.A. at 165-66; and (4) an unsworn statement from another individual stating inter alia that Hopkins had a poor memory, that that individual had never seen Hopkins sell or assist anyone selling drugs, and that Hopkins had not, to that individual's knowledge, authorized anyone to sell any drugs. J.A. at 167.

As the appellant essentially conceded at oral argument, even if credited entirely, these submissions do not support even an inference that the property was not unlawfully used. And, especially given that the burden of proof is on the defendant-appellant, they are also insufficient to support a jury finding of innocent ownership. The bare assertions of innocent ownership by the lawyer and Hopkins are not entitled to any weight at all. And while the statements by the two drug convicts might be entitled to some weight, even if these statements are credited in their entirety, the affidavit still contains ample uncontradicted evidence that Hopkins knew of, and perhaps participated in,

6

the illegal activities at the building; this uncontradicted evidence is more than sufficient to prevent a reasonable jury from finding innocent ownership.

III.

Probably realizing the inadequacy of the evidence introduced at the forfeiture stage of the proceedings in response to the government's motion for summary judgment, the appellant argues primarily that we should reverse the district court's grant of summary judgment because of alleged errors that occurred at earlier stages of the proceedings. In particular, the appellant argues that under United States v. James Daniel Good Real Property, 510 U.S. 43 (1993), Hopkins was denied due process when the magistrate refused to allow him to introduce evidence of innocent ownership at the probable cause hearing prior to seizure. See id. at 53-56. Even if erroneous, however, the magistrate's exclusion of Hopkins' evidence at the pre-seizure proceedings in no way prevented the Hopkins heirs from introducing the same or similar evidence in response to the government's motion for summary judgment at the subsequent forfeiture proceedings. For precisely this reason, this court has held that "a Good-violative seizure does not immunize the property from forfeiture." United States v. Marsh, 105 F.3d 927, 931 (1997). Rather, the remedy for a Good violation is that "the government must account for the profits or rent which it denied the claimant during the period of illegal seizure." Id. Here, because any Good violations that may have occurred at the pre-seizure hearing would not constitute grounds for reversing the grant of forfeiture, and because neither Hopkins nor his heirs has made a claim for an accounting, we need not reach the question of whether Hopkins was denied due process at his pre-seizure hearing.

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED

7