[Civ. No. 7301. Fourth Dist. July 22, 1964.]

JACOB J. HOHN et al., Plaintiffs and Respondents, v. RIVERSIDE COUNTY FLOOD CONTROL AND WATER CONSERVATION DISTRICT, Defendant and Appellant.

Ray T. Sullivan, Jr., County Counsel, for Defendant and Appellant.

Hennigan, Ryneal & Butterwick and Fred H. Ryneal for Plaintiffs and Respondents.

BROWN (R. M.), J.*—Appellant appeals from a judgment in favor of respondents quieting title to real property in an action filed on July 22, 1959. Respondents' first amended complaint first sought to quiet title and second, to recover the rental value of appellant's possession of the property. Consideration of the second cause of action was deferred by stipulation until the decision was reached on the first cause of action.

The property involved herein was owned in 1929 by O. L. Bergen and Persis Bergen who, on April 1, 1929, executed two notes, one in the amount of $14,000 and the other for $6,000, both secured by a deed of trust in favor of W. A. Van Horn and Maggie A. Van Horn. The $14,000 note and the

---

*Assigned by Chairman of Judicial Council.

deed of trust were assigned on May 18, 1929, to Lillian F. Woods and Cecile Woods Lewis as joint tenants, and were thereafter assigned to respondents by written instrument dated February 3, 1950, for a consideration of $3,000. Thereafter, a substitution of trustees under the deed of trust was accomplished by judicial proceedings in Riverside County Superior Court and respondents recorded a notice of default under said deed of trust on January 12, 1956. The property was then sold at a trustee's sale on December 17, 1956, the respondents being the purchasers at said sale for $85,000.

The appellant traced its title through various conveyances from the common source, the first of which was a deed dated April 20, 1929, from the Bergens to F. D. Cornell Company. In 1950 the appellant had acquired an option to purchase the real property which is the subject of this litigation, but it was never exercised. On December 12, 1951, the appellant filed a condemnation action relating to the real property in question in which the respondents were named as parties defendant, and obtained immediate possession of the premises by an order on December 30, 1952. This action was never brought to trial and was dismissed on January 19, 1959. The respondents had sought to compel adjudication of the rights of the parties to these premises and filed a notice to vacate the dismissal, without success, the motion being denied by the trial court on February 20, 1959.

The deed of trust under which the respondents assert their claim of title was, by its terms, security for two promissory notes. The first note dated April 1, 1929, was for $6,000, to mature on October 1, 1929; and the second note of the same date was for $14,000, the latter to mature April 1, 1932. Evidence of ownership was introduced by respondents only as to the $14,000 note, and it does not appear from the record that respondents assert any claim to the $6,000 note, and the explanation as to what happened to it is not clear from the record. It was stipulated between the parties that a common source of title of the appellant and respondents had been established, to wit, through the O. L. Bergens.

*Respondents Acquired Entire Legal Title to the Property by Exercising the Power of Sale Upon Default Payment of One of Two Notes Secured by the Deed of Trust.*

■ Appellant claims that respondents, at the most, could assert only a proportional interest in the security of the trust

deed because of their $14,000 note and not the $6,000 note, which it claims was not included in the sale.

It is true, as stated in *Phelan* v. *Olney*, 6 Cal. 478, 483, that if a part of several notes secured by a mortgage be assigned by the mortgagee, a pro rata portion of the security accompanies the note or notes assigned, and, as the court said in *Grattan* v. *Wiggins*, 23 Cal. 16, 30: "... it would seem to be but just and equitable that each should be entitled to a *pro rata* share, upon the principle that equity delights in equality."

California does hold, however, that the trustee holds the legal title, and it would follow logically from this foundation that upon consummating one sale, the trustee would have no further title capable of being transferred at a later sale.

The $6,000 note was last in the possession of respondents' predecessors in interest and is claimed to have been destroyed.

In *Grattan* v. *Wiggins, supra,* 23 Cal. 16, at pages 31-32, it was said: "It follows, therefore, that Foster had the right to foreclose the mortgage and sell the whole of the mortgaged property, or so much thereof as might be necessary for the payment of that part of the mortage debt held by him; that the holders of the other notes had no right to require him to pay them a *pro rata* portion of the proceeds of the sale, and if it required a sale of the whole of the mortgaged property to pay his debt, it would leave nothing upon which they could claim any lien or incumbrance. The interest of the holders of the other notes was not that of subsequent incumbrancers to Foster, but simply as parties having an interest in the same incumbrance upon such portion of the mortgaged premises as might remain after the satisfaction of that portion of the debt held by Foster. They could not properly be designated as the holders of a junior incumbrance, because they claim under the same mortgage, and not by a junior one. They had an interest in a portion of the mortgaged debt; that is, that portion of it held by them, but not in that portion held by Foster. They would have been proper parties as co-plaintiffs with Foster, in the suit to foreclose, so that they could receive any overplus of the proceeds of the sale of the mortgaged property which might remain after the payment of Foster's debt, but they were not *necessary* parties in the sense that no decree of foreclosure could be made without bringing them in."

In volume 34, California Jurisprudence 2d, Mortgages, section 474, at page 155, it is said: "Even if the trustee should misapply the funds received from the sale, the title of the purchaser would not be affected."

In *Borneman* v. *Salinas Title Guar. Co.*, 66 Cal.App.2d 500, the court said at page 503 [152 P.2d 649]: "Assuming, without deciding, that the trustee made a wrongful application of surplus purchase money, that might give plaintiff a right of action against the trustee but it could not affect the title of the purchasers at the trustee's sale."

Section 473 of volume 34, California Jurisprudence 2d, page 154, states: "A sale conducted in accordance with the terms of a power of sale in a mortgage or trust deed, on its consummation by a conveyance, confers the absolute legal title on the purchaser. The purchaser obtains not only the fee but also all the incidents, including the right to possession free of all claims on the part of the mortgagor or trustor. His title is free of all claims subordinate to the mortgage or trust deed under which the sale was made, but subject to all prior liens, including liens for taxes."

### Respondents' Superior Title

To establish a prima facie case in a quiet title action, where the plaintiff relies upon a paper title alone, " . . . he must trace his title (1) to the government; or (2) to a grantor in possession at the time of the conveyance to the plaintiff; or (3) to a source common to the chains of title of plaintiff and defendant." (*Ernie* v. *Trinity Lutheran Church*, 51 Cal.2d 702, 706 [336 P.2d 525]; 41 Cal.Jur.2d, Quieting Title, § 75, pp. 570-571.)

The stipulations establishing a common source of title of the parties to this lawsuit are sufficient to establish a prima facie case. The issue then becomes a question as to whether respondents or appellant have established a better title from that common source.

In *Wagnor* v. *Blume*, 71 Cal.App.2d 94, at page 102 [161 P.2d 1001], the court stated: " . . . where both parties derive title from a common source the burden is placed upon the party having the inferior title from the common source, if he relies upon title from another independent source, to prove that the title acquired from the independent source is paramount to the title in the common source; the proof by one party of better title from a common source makes out a prima facie case for him, and the burden of establishing a superior

title from some other source is then cast upon the other party.''

Appellant having made no claim to a paramount title derived through an independent source, then respondents must prevail if they had a better title from the Bergens than that held by the appellant. In *Santens* v. *Los Angeles Finance Co.*, 91 Cal.App.2d 197, 202 [204 P.2d 619], the court said: ''Plaintiff made out a prima facie case, since it was stipulated that Charles E. Holtzman was the owner in fee of the real property described in the complaint, and that he was the common source of whatever right, title or interest the parties or either of them possessed.'' The court thus found that the plaintiff had established a better title from the common source.

The case of *Phillips* v. *Menotti*, 167 Cal. 328 [139 P. 796], further illustrates the point that in an action to quiet title where a common source of title is established, plaintiff proves a prima facie case by introduction of a deed to himself from the common grantor, without proof of possession, or further proof as to title in him. There, plaintiff proved a deed to himself from the common grantor while defendant relied upon a previous unrecorded executory contract of sale with the common grantor.

The respondents having shown a clear and unbroken chain of title through the medium of the deed of trust aforesaid from the Bergens to themselves, respondents' title as derived from the Bergens is superior to the appellant's, whose chain of title from the Bergens is a series of mesne conveyances, none of which affects the validity of said deed of trust or derogates in any manner from respondents' title.

California has adopted the ''title'' theory in reference to deeds of trust, which is that ''title to the property actually is conveyed to the trustee who retains such title until the debt is satisfied or the property sold to enforce payment.'' (Ogden, Cal. Real Property Law, § 17.44, pp. 656-657; *Bank of Italy etc. Assn.* v. *Bentley*, 217 Cal. 644, 654-657 [20 P.2d 940]; *Estate of Moore*, 135 Cal.App.2d 122, 131-132 [286 P.2d 939]; *Hagge* v. *Drew*, 27 Cal.2d 368, 376 [165 P.2d 461].)

Title to the real property involved in this lawsuit was thus transferred by the Bergens to Security Title Insurance and Guarantee Company as trustee under the deed of trust, and pursuant to the provisions of said instrument the trustee re-

tained title until the debt was satisfied or the property sold to enforce payment.

The Bergens sold the property on April 20, 1929, to F. D. Cornell Company subject to the Van Horn's deed of trust. In March 1931 F. D. Cornell Company sold the property to Genereux subject to encumbrances of record. In October 1931 Genereux by a quitclaim deed sold to Cajalco Land Company, subject to encumbrances of record. In March 1933 Cajalco quitclaimed said property to Southwest Sales Company subject to all liens and encumbrances. No mention of the encumbrances was made in 1938 in a grant deed from Southwest Sales Company to Phipps, who on the same date made a deed back to Southwest Sales Company without mentioning the encumbrances. In September 1942 Southwest Sales Company quitclaimed the property to Morgan with no mention of the encumbrances, and again in 1945 Southwest Sales Company made a quitclaim deed to Morgan. Morgan's interest was distributed in 1947 by a decree of distribution to his widow, Cynthia I. Morgan (who later became Cynthia I. Brown). In 1950 Mrs. Brown gave an option to the appellant to purchase said property. In 1955 she quitclaimed said property to the appellant, and at the same time made a grant deed to the appellant for portions of the involved property, waiving her claims to any money deposited in the comdemnation action brought by appellant.

Thus, it is self-evident that the claims of the appellant in and to the real property in question are subsequent and subordinate to the rights conveyed to the trustee on behalf of the Van Horns by the deed of trust in question.

The trust deed contains a power of sale which never outlaws. (1 Witkin, Summary of Cal. Law, § 44, p. 737.) ■ Respondents, having the beneficial interest in the trust deed, and having duly, lawfully and regularly caused the successor trustee to exercise the power of sale, have foreclosed any right of title of the Bergens or the Cornell Company and its successors in interest. ■ There is a presumption that a sale under a trust deed was conducted regularly and fairly. (*Brown* v. *Busch,* 152 Cal.App.2d 200, 204 [313 P.2d 19].)

■ The trustee's deed on the sale under the power of sale passed to the purchasers (respondents) the title to the property held by the maker of the security instrument on the date he executed the same, and any title afterwards acquired.

(Ogden, Cal. Real Property Law, § 17.69, p. 668; 34 Cal.Jur. 2d, Mortgages, § 463, p. 141; *Bracey* v. *Gray*, 49 Cal.App.2d 274, 277-278 [121 P.2d 770].)

 The purchaser at the trustee's sale and the grantee in the trustee's deed acquires title free of all rights of the trustor or anyone claiming under or through him, and his title is free of all claims subordinate to the encumbrance pursuant to which this sale was made. (34 Cal.Jur.2d, Mortgages, § 473, p. 154; *Bracey* v. *Gray, supra.*)

No effort was made by the appellant with respect to any other title acquired from any independent source; it pointed out only the weaknesses of respondents' title. However, it is admitted that, ''It is elementary that a plaintiff in an action to quiet title cannot prevail unless he shows title in himself. If he has no title, he cannot complain that someone else, also without title, asserts an interest in the land. [Citations.] A defendant in such an action may always effectually resist a decree against himself, by showing simply that the plaintiff is without title.'' (*Williams* v. *City of San Pedro etc. Co.*, 153 Cal. 44, 49 [94 P. 234].)

### Did the Tax Collector's Deeds Diminish or Defeat Respondents' Title?

Respondents submitted tax collector's deeds made in 1935 showing that this same property had been sold for taxes in 1930 and then later deeded to the state. There was no evidence submitted with regard to these particular deeds. Thus, by these deeds, the title to this property was in the State of California and could not get back onto the tax rolls unless it was redeemed or sold to someone else. There is no evidence that any of the subsequent owners of this property had ever purchased the property from the state. However, respondents submitted in evidence seven redemption certificates issued to the respondents, with the name of Cynthia I. Brown appearing on four of them, and tax statements showing that the premises were assessed to respondents for the years 1957-1961, that the taxes on the property were delinquent and that it was redeemed and the taxes paid by the respondents.

 Real property deeded to the state may be redeemed by payment of all delinquencies and statutory penalties at any time prior to the disposition of said property by the state (Rev. & Tax. Code, § 4101), and upon redemption the effect of the sale and deed to the state is terminated and title is

restored to the former owner or his successor in interest. (Ogden, Cal. Real Property Law, § 18.30, pp. 686-687.)

The State having not disposed of the real property in question after the tax collector's deeds were issued to it, the respondents could redeem the property. The tax redemption officer, in making out the redemption, stated, "I Hereby Certify That The Amount Necessary to Redeem The Property Described Herein Is $—." (The appropriate amount was filled in on each certificate.) This statement is found on each of the respective redemption certificates. Even though the property is particularly referred to as 1954-1957 delinquency sales, it is further stated that the property was sold to the State on June 29, 1955. (Rev. & Tax. Code, §§ 4376, 2862.)

We must accept the inference that supports the judgment that this property was redeemed and placed back on the assessment rolls and, ". . . it will be presumed that an assessor has regularly and correctly assessed property." (*E. E. McCalla Co.* v. *Sleeper*, 105 Cal.App. 562, 568 [288 P. 146].)

### Respondents Were not Barred by Laches or the Statute of Limitations

The respondents were not barred by laches or the statute of limitations. The California cases are clear, through a continuing line of authority, that the power of sale under a deed of trust is not barred, or "never outlaws" and that the power of sale may be exercised by the trustee who holds the title though the statute of limitations has barred any action on the debt. (1 Witkin, Summary of Cal. Law, § 44, subd. 1, p. 737.)

In *Penzner* v. *Foster*, 170 Cal.App.2d 106 [338 P.2d 533], the court confirms the unvarying California rule. In this case the note was given in 1929 and more than 28 years had elapsed between the date of execution of the note and the time of the trial of the action to quiet title. At page 108 the court said, "The enforcement of a power of sale contained in a deed of trust is never outlawed by a lapse of time alone." And, quoting from *Sipe* v. *McKenna*, 88 Cal.App.2d 1001 [200 P.2d 61], further stated: " 'A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of

limitations has run against the indebtedness.' '' (See also *Grant* v. *Burr*, 54 Cal. 298, 301; and *Sacramento Bank* v. *Murphy*, 158 Cal. 390, 395-396 [115 P. 232].)

▇ It is also true that a debt secured by a deed of trust, even though barred by the statute of limitations, does not invalidate an assignment of a beneficial interest in the security. (*Sipe* v. *McKenna, supra,* 88 Cal.App.2d 1001, 1006; 1 Witkin, Summary of Cal. Law, § 44, p. 737.)

The condemnation action lay dormant for nearly eight years; yet, during this period of time, the appellant had full knowledge of the substitution of the trustee and conduct of the sale by virtue of respondents' supplemental answer in the condemnation action filed March 4, 1957.

The appellant set forth no defense of laches in its answer nor was it proven. ▇ The defense of laches is regarded as a matter of affirmative defense and must be alleged and proved by defendant unless the facts that constitute laches appear on the face of the complaint, and where the facts constituting laches do appear on the face of the complaint, the defense must be advanced by the defendant by means of a demurrer or in some other legal manner, and if he fails to do so it is deemed to have been waived. (See *Phoenix Mutual Life Ins. Co.* v. *Birkelund,* 29 Cal.2d 352, 363 [175 P.2d 5].)

Appellant claims that it has made an expenditure of some $16,000 in construction on the lands involved between 1954 and 1955, but it appears from the condemnation suit when it was filed in 1951 and by the answer of the respondents that appellant was well aware of the claim of respondents though it admits that it dismissed the condemnation action when it acquired the deed from Cynthia I. Brown.

The judgment is affirmed.

Coughlin, Acting P. J., and Brown (Gerald), J., concurred.