OPINION
CLIFTON, Circuit Judge:
Civil forfeiture actions brought by the government require compliance with certain rules by both the government and by any claimant. In this case, the government and the only claimant each violated one of the rules. This appeal requires us to consider the appropriate consequences.
The government sought to forfeit two bundles of currency in the amounts of $11,500 and $2,971. Only one contrary claim was filed regarding both sets of currency. The district court concluded that the claimant failed to comply with Supplemental Admiralty and Maritime Claims Rule G(5)(a)(iii), which requires that “[a] claim filed by a person asserting an interest as a bailee must identify the bailor.” Supp. Rule G(5)(a)(iii). The claim form filed here asserted a different property interest, described by the claimant as “possessory,” and it did not identify a bail- or. The claimant’s alleged interest in the $11,500 later came to be identified as a bailee’s interest. Based on the failure to identify the bailor, the district court struck the claim to the $11,500. We agree with the district court that the requirement applied to the claimant, even though he initially asserted a different interest. We also conclude, however, that striking his claim based on that transgression was not mandatory but was instead subject to the sound exercise of discretion by the court. Under the circumstances of this case, the dismissal of the claim to the $11,500 for that failure was an abuse of discretion, primarily because the omission did not prejudice the government, did not appear to be calculated, and did not delay or extend the forfeiture proceedings.
The district court concluded that the government failed to provide notice to the claimant within 60 days after the date of the seizure of both sets of currency, as required under 18 U.S.C. § 988(a)(l)(A)(i) for a nonjudicial civil forfeiture. Neither did the government return the money to the claimant. Instead, the government commenced civil forfeiture proceedings. It could properly do so, even though it had not given timely notice, and we conclude that the government was not required in these circumstances to return the property-
We thus affirm the judgment in favor of the government regarding the portion of currency amounting to $2,971. We vacate the judgment in favor of the government as to the $11,500 portion and remand for further proceedings.
I. Background
The currency at issue was seized when claimant Charles Guerrero (“Guerrero”) went to a jail in Portland, Oregon, to post bail for his wife, Rosalie Guerrero (“Rosalie”), who had been arrested the night before for possession with intent to distribute heroin. Guerrero did not enter the jail himself but accompanied Virgil Wood and gave him $ 11,500 to post bail. At the jail, law enforcement agents asked Wood how he had obtained the currency. Wood eventually identified Guerrero as the source. Finding Guerrero outside the jail, law enforcement officers searched him and found $2,971 in his pocket, along with sev *1010 eral pills. Guerrero was arrested and told the officers that the $11,500 and $2,971 were his.
The circumstances surrounding the seizure of the currency led the government to believe that the money was connected to drug trafficking. The officers discovered several grams of heroin in a black bag in the trunk of Wood’s car, and Guerrero later pled guilty to possession of heroin. A trained dog sniffed the currency for the odor of narcotics, and the government contends that the dog alerted positively.
The United States initiated civil forfeiture proceedings against the $11,500 and $2,971 under 21 U.S.C. § 881, on the basis that the currency was either proceeds of drug trafficking or used to facilitate drug trafficking. Guerrero filed the sole claim to the currency. In the claim he filed with the court, through counsel, he described his interest as “possessory.” In a “seized asset claim form” attached to the court filing, he provided a handwritten response to an inquiry as to his interest: “My interest is possessory, i.e., the money belongs to me.”
In his subsequent deposition Guerrero acknowledged that he had sold drugs and that he had not had stable employment for years. He maintained, however, that the seized currency came from legitimate sources. He testified that the $2,971 was money he had saved from the sale of some furniture and tools. With respect to the $11,500, Guerrero testified that his wife had received the money several years earlier from an insurance settlement and had given it to him for safekeeping.
The district court granted summary judgment to the government with respect to the $11,500, holding that Guerrero failed to comply with Supplemental Admiralty and Maritime Claims Rule G(5)(a)(iii), because he failed to identify Rosalie as his bailor on the claim form. The court further held, in the alternative, that there was no genuine issue of fact as to whether the $11,500 was the proceeds of or facilitated drug trafficking. The $2,971 was forfeited after a jury found that it constituted proceeds of illegal drug activity and facilitated drug trafficking. Guerrero timely appealed.
II. Bailor Identification Requirement
When the government initiates civil forfeiture proceedings against specified property, a person may contest the forfeiture by filing a claim in district court in accordance with the Supplemental Rules for Admiralty and Maritime Claims. 18 U.S.C. § 983(a)(4)(A). The claim must “identify the claimant and state the claimant’s interest in the property.” Supp. Rule G(5)(a)(i)(B). Among the other requirements, and the one at issue here, is that “[a] claim filed by a person asserting an interest as a bailee must identify the bailor.” Supp. Rule G(5)(a)(iii). Supplemental Rule G(8)(c) specifically provides that the government may move to strike a claim for failure to comply with specified portions of the Supplemental Rules, including Supplemental Rule G(5), or because the claimant lacks standing.
The district court granted the government’s motion to strike Guerrero’s claim to the $11,500 for failing to identify Rosalie as the bailor of the currency on his claim form. The court’s order noted that Guerrero “never pled the existence of a bailment, and did not identify Rosalie Guerrero as the bailor.” The order also noted that Guerrero did not explain until his deposition that the money had been given to him by his wife, and further that Guerrero never sought to amend his claim form to identify her as the bailor.
We review a district court’s interpretation of the Supplemental Admiralty and Maritime Claims Rules de novo. See United States v. 2,164- Watches, 366 *1011 F.3d 767, 770 (9th Cir.2004). Dismissal of a forfeiture claim for failure to comply with procedural requirements is reviewed for abuse of discretion. See United States v. Real Property Located at 22 Santa Barbara Drive, 264 F.3d 860, 868 (9th Cir.2001). A district court abuses its discretion if it does not apply the correct legal standard, Bateman v. U.S. Postal Service, 231 F.3d 1220, 1223 (9th Cir.2000), or if it fails to consider the factors relevant to the exercise of its discretion. See Bautista v. Los Angeles Cnty., 216 F.3d 837, 841-42 (9th Cir.2000). We conclude that the district court was correct in holding that Rule G(5)(a)(iii) applied to Guerrero, but that striking his claim was an abuse of discretion.
As described above, Guerrero’s claim form stated that his interest in the currency was “possessory.” It was not until after the government moved to strike Guerrero’s claim for lack of standing that Guerrero argued in response that he had an ownership interest in the currency by virtue of his marriage to Rosalie and further described his “possessory” interest as that of a “bailee for Rosalie.” That was the first time that Guerrero or anyone else described Guerrero’s relationship to the currency as that of a bailee. The court declined to strike Guerrero’s claim based on a lack of standing, holding that there was a genuine dispute of material fact as to whether Guerrero was a bailee of the currency. But the court went on to strike Guerrero’s claim for failure to identify Rosalie as the bailor.
Guerrero contends that the rule only requires the identification of the bailor when the claimant explicitly asserts a bail-ee interest on his claim form. Guerrero’s claim form did not describe his interest as that of a bailee. The government argues that the bailor identification requirement did apply here.
The rule in question, Supplemental Rule G(5)(a)(iii), states under a subheading entitled “Filing a Claim” that “[a] claim filed by a person asserting an interest as a bailee must identify the bailor, and if filed on the bailor’s behalf must state the authority to do so.” That language does not explicitly spell out whether “asserting an interest as a bailee” refers only to the time the claim form is filed or includes a subsequent assertion of a bailee’s interest.
We are persuaded that the requirement to identify the bailor applies to the assertion of a bailee’s interest at any time, even if it is articulated after the claim form is filed. The purpose of the requirement is to provide the government and the court notice of the specific basis of the claim and the source of the property. See United States v. Real Property, 135 F.3d 1312, 1317 (9th Cir.1998) (noting that the purpose behind forfeiture pleading requirements is “to inform the court that there is a claimant to the property who wants it back and intends to defend it”); United States v. $321,4.70.00, U.S. Currency, 874 F.2d 298, 304 (5th Cir.1989) (in defending bailor identification as a standing requirement, noting that “a courier carrying cash from an unknown owner to an unknown recipient ... the ideal mule for drug traffickers, must be prepared to demonstrate that he has a lawful possessory interest”). This purpose would be ill-served if a claimant could avoid the bailor identification requirement simply by describing his interest on the claim form in another way and waiting until later to identify it as a bailee’s interest. Therefore, we conclude that the bailor identification requirement in Rule G(5)(a)(iii) applies to a claimant who asserts an interest as a bailee of contested property, even if he had not described himself as a bailee on his claim form. The rule thus applied to Guerrero.
*1012 Guerrero’s claim should not have been dismissed as a result, however. The district court here did so because it understood that “strict compliance” with the forfeiture filing rule was necessary, citing our court’s decision in United States v. Real Property, 135 F.3d 1312 (9th Cir.1998). But the claimant’s failure in that case was not like Guerrero’s misstep here. In Real Property, the claimant received notice of forfeiture proceedings but failed to file a timely claim of any kind, only challenging the forfeiture proceedings one year after receiving notice and six months after the government received a final judgment of forfeiture. Id. at 1313-14. In holding that failure to file a claim within the applicable time limits precluded the claimant from later challenging the forfeiture, we noted that allowing him to challenge a forfeiture judgment after so much time had elapsed would “exact a significant toll on judicial resources.” Id. at 1317. That does not mean that any deficiency in a claim form requires dismissal of a claim.
To the contrary, we have held that courts have “discretion to overlook the failure to conform to the requirements of [forfeiture claim rules].” United States v. Real Property at 2659 Roundhill Dr., Alamo, Cal., 194 F.3d 1020, 1024 (9th Cir.1999). Among the factors relevant to the exercise of that discretion are whether the deficiency prejudiced the government, see United States v.1982 Yukon Delta Houseboat, 774 F.2d 1432, 1436 (9th Cir.1985), and whether it was a strategic attempt to gain some advantage. See United States v. Real Prop. Located at 22 Santa Barbara Dr., 264 F.3d 860, 870 (9th Cir.2001) (refusing to excuse noncompliance with Rule C(6) where the reason for claimant’s failure to timely file a claim was strategic). After reviewing these factors, we conclude that it was an abuse of discretion to strike Guerrero’s claim.
The failure of Guerrero’s claim form to identify a bailee’s interest and to list Rosalie as the bailor did not prejudice the government or delay the proceedings. The government knew of Rosalie’s identity and took her deposition, as well as Guerrero’s. There is no basis to conclude that the government was unable to conduct a proper investigation. Regardless of how Guerrero characterized his possessory interest, the government was aware of the facts underlying Guerrero’s possession of the currency.[1]
Nor was there any indication that Guerrero’s failure to identify the bailor was a strategic attempt to gain some advantage. There was no advantage gained. And it would not have been clear to Guerrero that failing to identify his interest with precise accuracy in the claim he filed would have been fatal. Cf. United States v. $260,24.2.00 in U.S. Currency, 919 F.2d 686, 688 (11th Cir.1990) (not holding claimant to knowledge of the requirement that he name his bailor because the Eleventh Circuit had not previously ruled on the specific issue).
In addition, the claim was dismissed without giving him an adequate opportunity to amend. In the dismissal order, the district court accurately noted that Guerrero did not seek leave to amend his claim. But the district court could have offered that opportunity and did not do so. See Supp. Rule G Advisory Committee Notes (“[T]he court should strike a claim or answer only if satisfied that an *1013 opportunity should not be afforded to cure the defects under Rule 15.”).With regard to pleadings, our general practice is to “freely give leave [to amend] when justice so requires.” Fed.R.Civ.P. 15(a)(2); see also Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir.2003) (stating that the policy of freely granting leave to amend is “to be applied with extreme liberality”).
That approach should apply here. Though Guerrero never moved to amend his claim, the absence of a formal motion for leave to amend does not preclude the district court from granting it. Edwards v. Occidental Chem. Corp., 892 F.2d 1442, 1445 n. 2 (9th Cir.1990). It is not surprising Guerrero did not request leave to amend his claim. The government did not move to strike Guerrero’s claim based on the failure to identify a bailor. Rather, the government premised its motion to strike on the ground that Guerrero’s asserted ownership and posses-sory interests were insufficient for Article III standing.[2] Even after Guerrero described himself as a bailee in his brief opposing the motion, the government did not argue to the district court that the claim should be struck for violating the bailor identification requirement. Instead, the government argued that, because Guerrero had not asserted a bailee interest or identified a bailor on his claim form, the court should not construe Guerrero’s claim as asserting a bailee interest. Under these circumstances, we conclude that striking the claim because Guerrero failed to identify Rosalie as bailor in the claim he filed was an abuse of discretion.
III. Source of the $11,500
The district court also granted summary judgment for the government on the alternative ground that there was no genuine dispute that the $11,500 was proceeds of or facilitated drug trafficking. Guerrero challenges that ruling.
In reviewing the summary judgment, we must view the evidence in the light most favorable to Guerrero and determine whether there is any genuine issue as to whether the currency was derived from or facilitated drug trafficking. United States v. $133,120.00 in U.S. Currency, 672 F.3d 629, 637 (9th Cir.2012). In a civil forfeiture action, the government bears the burden of proving by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). Summary judgment is appropriate if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a).
The government did not prove a link between the currency and a specific act of drug trafficking, but it was not required to do so, notwithstanding Guerrero’s arguments to the contrary. The government may meet its burden with sufficiently strong circumstantial evidence linking the currency to drug trafficking in general. See United States v. Currency, U.S. $12,500.00, 283 F.3d 977, 984 (9th Cir.2002) (affirming government’s motion for summary judgment in light of substantial circumstantial evidence that currency was connected to drug trafficking, and where claimant refused to disclose the source of the currency or pro *1014 vide any other evidence that the source was legitimate).
In granting summary judgment, the district court emphasized “the absence of some admissible evidence supporting the contention that the source of the $11,500 was the insurance settlement paid to Rosalie Guerrero two years prior to the seizure.” (Emphasis in original.) This statement immediately preceded the district court’s conclusion that other evidence offered by Guerrero in support of the insurance settlement as the source of funds (Rosalie’s declaration and Guerrero’s deposition testimony regarding the source of the money given to him by Rosalie) was not admissible evidence and could not be considered.[3]
Guerrero did offer admissible evidence that supported that proposition, however. In particular, he presented a declaration from the attorney who represented Rosalie in her insurance claim. The declaration stated that Rosalie received insurance proceeds in the amount of $12,743.75 two years before the seizure, and an additional $11,096.05 on an undisclosed date, as compensation for injuries sustained in a car accident. The declaration attached and authenticated two documents supporting that contention. The district court did not rule that the lawyer’s evidence was inadmissible. Indeed, the court’s order even referred to the fact of the insurance payments to Rosalie, with citation to the attorney’s declaration, as part of the background of the case.
The district court nonetheless concluded that “Rosalie Guerrero’s receipt of an insurance settlement more than two years prior to the seizure in question does not give rise to a genuine dispute of material fact as to whether the seized currency represented a portion of that settlement or profits therefrom.” It is clear that there was plenty of evidence to support an ultimate factual finding that the money came from drug sales. Viewing the evidence in the light most favorable to Guerrero as we must, however, we do not agree that the evidence was so conclusive as to eliminate a genuine issue as to the source of the $11,500.
The length of time between the insurance settlement and the seizure of the currency, more than two years, did not preclude a finding that the currency was legitimate. Guerrero testified that Rosalie was unemployed at the time she gave Guerrero the money, but there was no evidence about her employment status the rest of the time. It is not unreasonable to think that someone receiving a lump sum of money might set it aside for a rainy day.
The evidence of a positive dog sniff alert to the currency did not conclusively prove that the currency came from drug sales. *1015 Given that the Guerreros dealt drugs, a jury could reasonably infer that any money they had, even if legitimately derived, could have been exposed to drugs, such as the heroin found in Wood’s vehicle at the scene of the forfeiture. And, there was some ambiguity in the record as to whether the drug dog properly alerted. In a document detailing the dog’s training, the canine officer stated that his dog has been trained to scratch or bite at the source of narcotics. In his notes on the $11,500, however, he did not mention the dog scratching or biting but wrote “sniffed intently — alerted.” That might mean that the dog sniffed intently and then alerted, or it might mean, as Guerrero argued, that the dog failed to scratch but that the officer nonetheless interpreted its sniff as an alert.
While the jury could draw inferences in favor of the government from Rosalie’s refusal to testify, her refusal was not necessarily inconsistent with a legitimate source for the currency. Given her own problems with the law, her attorney may have advised her to play it safe and not answer any questions that might require her to acknowledge illegal activity. At her deposition, Rosalie’s attorney expressed concern that if she answered even a seemingly innocuous question, the government would accuse her of “picking and choosing when to answer.”
Guerrero did not have a lot of admissible evidence on his side, and a jury might well be persuaded by the government’s evidence. On the $2,971 bundle of currency, the forfeiture case went to trial, and the jury found in favor of the government. But Guerrero mustered enough evidence to permit a reasonable jury to conclude that the $11,500 was derived legitimately, and that was enough to establish the existence of a genuine issue of material fact. The alternative basis identified by the district court cannot sustain the grant of summary judgment in favor of the government as to the forfeitability of the $11,500.
IY. Timeliness of Notice
The district court held that the government failed to provide Guerrero with timely notice of the forfeiture of both the $11,500 and the $2,971. The government held on to the money despite the failure to give notice, and it later commenced this civil forfeiture proceeding. Guerrero argued that 18 U.S.C. § 983(a)(1)(F) required that the money be returned to him. The district court disagreed and held that the statute did not require the return of the currency to Guerrero. We agree with the district court’s interpretation.[4]
When the federal government seizes property under a civil forfeiture statute, it must send notice to potential claimants “in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure.” 18 U.S.C. § 983(a)(1)(A)(i). If the government does not send proper notice in the time allotted, the statute provides that the government “shall return the property to [the person from whom the property was seized] without prejudice to the right of the Government to commence a forfeiture proceeding at a later time.” 18 U.S.C. § 983(a)(1)(F). When the government commences a civil forfeiture proceeding, it may seize the property. See 21 U.S.C. § 881(b); 18 U.S.C. § 981(b)(2).
*1016 This framework arguably suggests that if the government fails to give timely notice, it should return the property though it could then commence forfeiture proceedings and re-seize the property. But is the government required to return the property even if it has in the meantime commenced forfeiture proceedings?
Some courts have held that it is — that when the government has failed to provide timely notice, it must return the seized property to the claimant even though it had already commenced forfeiture proceedings. See De Saro v. United States, 173 Fed.Appx. 760, 765-66 (11th Cir.2006); United States v. Assorted Jewelry with an Approximate Value of $219,860.00, 386 F.Supp.2d 9, 13 (D.P.R.2005). But others have held that the government need not return the seized property. See, e.g., Return of Seized Property v. United States, 625 F.Supp.2d 949, 954-55 (C.D.Cal.2009) (reasoning that the release of seized property would be “academic” because the government’s initiation of forfeiture proceedings would allow it to immediately reseize the property), mandamus denied, In re Jordan, 606 F.3d 1135, 1137 (9th Cir.2010) (holding that such an interpretation was not clear error); United States v. $111,081.00 in U.S. Currency, No. 06-21820-CIV, 2007 WL 2904154, at *3 (S.D.Fla. Oct. 4, 2007) (noting that the plain language of section 983(a)(1)(F) allows the government to bring a forfeiture proceeding after returning seized property, but does not require the return of property before bringing a later proceeding).
In our view, the better and more practical interpretation of the statutory framework is that a failure to provide timely notice does not require the government to return the property if it has subsequently commenced a forfeiture proceeding. The government can still file a forfeiture action, and once it has done so, it is empowered to seize the property. By the time the issue was raised before the district court, the forfeiture proceeding was under way. Requiring the return of the property and then permitting the government to immediately re-seize it would impose a meaningless exercise.
V. Conclusion
The portion of the judgment forfeiting the $2,971 is affirmed, and the portion forfeiting the $11,500 is vacated. The case is remanded for further proceedings as to the $11,500.
AFFIRMED in part; VACATED and REMANDED in part.

. The dissenting opinion suggests, at 1018-19, that the government was prejudiced by Guerrero’s failure to identify his bailee interest, but the government did not itself so argue. Rather, it stood, as did the district court, on the proposition that “strict compliance” with Rule G(5) was required. As discussed above, we conclude that the court had discretion to overlook Guerrero’s omission.

. The government has not argued on appeal that Guerrero lacked Article III standing. Guerrero’s testimony described a bailee interest in the currency, as we discussed above, and such an interest was sufficient for Article III standing. See United States v. $191,910 in U.S. Currency, 16 F.3d 1051, 1057 (9th Cir. 1994) (“In order to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items.”), superseded on other grounds by statute as stated in United States v. $80,180.00, 303 F.3d 1182, 1184 (9th Cir.2002).

. Guerrero also challenges the refusal of the district court to consider two pieces of evidence tending to support claimant’s position that the currency was legitimately derived from Rosalie’s insurance proceeds. Because we vacate the summary judgment on substantive grounds, we need not discuss the eviden-tiary rulings at length, but the exclusion of the evidence was not an abuse of discretion. First, the court struck a declaration by Rosalie because she later invoked the Fifth Amendment and refused to answer questions about the source of the currency at her deposition. When a witness testifies and then invokes the Fifth Amendment to avoid adversarial testing of the truth of that testimony, a district court may strike that testimony to avoid distortion of the truth. United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 640-42 (9th Cir.2012). Second, Guerrero tried to offer his own testimony as to what Rosalie told him about the currency’s source. That was hearsay and was appropriately excluded. Guerrero argues that it should have been admitted under the residual hearsay exception, Federal Rule of Evidence 807. But a statement qualifying under the residual exception must have "equivalent circumstantial guarantees of trustworthiness." Fed.R.Evid. 807(a)(1). No such guarantees were present here.

. The government argues that it complied with the applicable notice requirements, and urges the court to affirm on this alternative ground. Because we conclude that the government need not return the currency even if it failed to provide timely notice, we decline to reach the issue. We therefore assume, without deciding, that notice was not timely in the remainder of the opinion.